# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Courtney N. Gilchrist, Respondent.

Appellate Case No. 2026-001459

---

Opinion No. 28346
Submitted July 17, 2026 – Filed August 12, 2026

---

## DEFINITE SUSPENSION

---

Disciplinary Counsel William M. Blitch, Jr., and
Assistant Disciplinary Counsel Phylicia Yvette Christine
Coleman, both of Columbia, for the Office of
Disciplinary Counsel.

Barbara Marie Seymour, of Clawson & Staubes, LLC, of
Columbia, for Respondent.

---

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, Respondent admits misconduct, agrees to pay
costs, and consents to the imposition of a public reprimand or a definite suspension
of up to three years.  We accept the Agreement and suspend Respondent from the
practice of law in this state for eighteen months.  The facts, as set forth in the
Agreement, are as follows.

## I.

On February 2, 2022, Respondent was indicted in federal court on four felony
charges arising from her role in obtaining an Economic Injury Disaster Loan
(EIDL) as part of a wide-ranging COVID-19 relief fraud scheme.  On July 27,
2022, a complaint was filed with ODC regarding Respondent's indictment.  On

July 29, 2022, Respondent was placed on interim suspension by this Court. *In re Gilchrist*, 437 S.C. 88, 876 S.E.2d 701 (2022).

In June 2023, Respondent entered a pre-trial diversion agreement with the United States in which she admitted responsibility for making false statements and agreed to repay the amount of the fraudulently obtained loan, plus interest. Additionally, Respondent was required to give testimony during the December 2023 trial of one of her co-conspirators, S.W., who served as a lawyer mentor to Respondent during law school and following graduation.

During her testimony, Respondent explained she was approached by S.W. about applying for COVID-19 relief funds to start her own business. Respondent admitted allowing S.W. to file an EIDL application on her behalf but insisted she never saw the EIDL application until after she had been indicted. Respondent testified that she provided S.W. with her bank information, social security number, birth date, 2019 tax records, and other information needed for the EIDL application process. S.W. did not ask Respondent about her income or business revenue, nor did Respondent voluntarily provide that information to S.W. It was later determined that S.W. altered the tax forms Respondent provided to inflate Respondent's income. Respondent never saw the altered tax forms until after she was indicted.

In July 2020, S.W. notified Respondent she had been approved for a loan in the amount of $150,000. On August 4, 2020, S.W. informed Respondent she would need to contact the United States Small Business Administration (SBA) to complete the identity verification process. Specifically, S.W. instructed Respondent via text message "Income $330,000," which Respondent understood to mean that if she was questioned about her income, she was to say that her income was $330,000, which Respondent knew was not accurate. When Respondent contacted the SBA, she completed the identification challenge questions and was informed she needed to confirm her business as an independent contractor. The SBA did not ask Respondent about her income, and Respondent did not inform the SBA that the income amount previously provided was incorrect.

Despite knowing S.W. provided the SBA incorrect information about Respondent's income, Respondent continued with the loan process and signed the loan documents to receive $150,000. Respondent admits she did not read all of the loan documents before signing them, despite her signature indicating she had. By signing the loan documents, Respondent also certified that she had not paid any fees, directly or indirectly, to anyone, including an attorney or accountant, for

services provided in connection with her loan application. However, this was not accurate, as Respondent paid S.W. $10,000 for assisting with the loan application.

Respondent did not spend the remaining $140,000 for several reasons, including that she wished to ensure everything was in order for her new business and because she was uneasy about some of the inconsistencies and misrepresentations she knew were involved in obtaining the loan. Nevertheless, Respondent contends she had no personal knowledge of the extent of these misrepresentations at the time the loan application was submitted.

On August 13, 2021, agents from the Federal Bureau of Investigation (FBI) and the SBA questioned Respondent at her home about her loan and the application process. Specifically, agents inquired whether Respondent knew S.W. and whether the income amount of $330,000 listed on her EIDL application was accurate. Initially, Respondent stated she could not recall who assisted her and that $330,000 was the correct amount for her income. However, Respondent ultimately told investigators that S.W. assisted her and that her 2019 income was not $330,000.

Respondent promptly returned the $140,000 in loan proceeds remaining in her possession. By June 2024, she had also repaid the $10,000 she gave S.W., plus $6,750 in interest, thus completing all her pre-trial diversion requirements. On July 3, 2024, a federal court granted the government's motion to dismiss with prejudice the indictment against Respondent.

## II.

In the Agreement pending before this Court, Respondent admits that her actions violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 8.4(b) (prohibiting a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, and misrepresentation); Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice). We further find Respondent's failure to self-report her felony indictment to ODC constitutes a violation of Rule 8.3(a), RPC, Rule 407, SCACR (requiring a lawyer charged with a serious crime to inform ODC in writing within fifteen days). *See* Rule 1.0(o), RPC (defining serious crime as a felony or any lesser crime that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).

Respondent further admits her misconduct is grounds for discipline under the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (providing a violation of the Rules of Professional Conduct is a ground for discipline); and Rule 7(a)(5) (providing conduct tending to pollute the administration of justice or demonstrating an unfitness to practice law is a ground for discipline).  As noted, Respondent agrees to pay costs and consents to the imposition of a public reprimand or a definite suspension of up to three years.  If a definite suspension is imposed, Respondent requests that it be imposed retroactively to the date of her interim suspension on July 29, 2022.  At the time of her misconduct, Respondent was thirty-four years old, and she had been practicing law for less than three years.  Respondent also has no prior disciplinary history.

In her affidavit in mitigation, Respondent explained that she "completely" trusted S.W and emphasized that she "considered [S.W.] a 'big sister' figure, a sounding board and a safe place.  I spoke to her often about life decisions and heeded her advice with respect to my career."  Respondent stated that she relied on S.W., who she "trusted completely due to her role as [a] mentor and the fact that she was a licensed attorney."  Respondent explained that she was initially reluctant to apply for an EIDL due to her "strong desire to avoid debt," but that S.W. persuaded her the loan would be "good debt" and allow her to leave her current job at a law firm and branch out on her own.

According to Respondent, S.W. committed numerous fraudulent acts in Respondent's name in connection with the EIDL application, including (1) misrepresenting Respondent's gross income to be $330,000, when her actual gross income was approximately $75,000; (2) creating a fictitious email address and using it to communicate to the SBA as if she were Respondent; (3) acting as Respondent in confirming, under penalty of perjury, that the information on the loan application was true and correct; and (4) with the help of an accountant, altering Respondent's actual 2019 tax return to fabricate a fake tax document indicating Respondent grossed $330,000 in 2019 and submitting this fake tax document to the SBA in connection with the loan application.[1]

Respondent acknowledged that when S.W. instructed her "income $330,000," Respondent became aware that incorrect information had been submitted to the

---

[1] According to a press release issued by the United States Attorney's Office following S.W.'s criminal conviction, S.W. fraudulently submitted at least nine EIDL applications, fabricating and submitting false documents to support these applications.

SBA. However, Respondent contends that due to her trust in S.W. and her misunderstanding that she qualified for the loan due to her credit score rather than her income, Respondent did not take any action to correct this false information. Respondent further acknowledges that her initial answers to investigators' questions were not truthful. However, Respondent avers that "within fifteen minutes of talking with the investigators, I came clean." At the end of her initial interview with investigators and at their request, Respondent called S.W. on a recorded line, and the recording and transcript of this call was used as evidence in S.W.'s criminal trial. Within a few hours of her investigative interview ending, Respondent returned the $140,000 in loan proceeds remaining in her possession to the government.

Respondent admitted that her actions "fell short of the standards required of lawyers" and emphasizes that she regrets trusting S.W. and failing to be more diligent in overseeing and understanding the loan process. Respondent stated, "I naively listened to [S.W.] when I should have been listening to my gut and the uneasy feelings that I was having about what she was telling me." Respondent noted she has made earnest efforts to do everything in her power to rectify her misconduct, including testifying against S.W. and repaying the government the full amount of the loan plus interest.

Attached to her affidavit in mitigation are twenty-one character letters from Respondent's peers, colleagues, classmates, professors, and community leaders. These character letters describe Respondent as careful, serious, capable, and client-centered attorney. On a personal level, Respondent is described as thoughtful, candid, and someone who demonstrates emotional maturity, honest self-reflection, and acceptance of responsibility. These letters characterize Respondent's involvement in the criminal scheme as an isolated lapse in judgment through which she has learned meaningful lessons.

Notwithstanding these mitigating circumstances, there are aggravating circumstances as well. Specifically, Respondent failed to self-report her federal indictment on four felony charges to ODC, and though her admitted dishonest conduct did not result in any criminal conviction, it nevertheless raises serious questions as to her honesty, trustworthiness, and fitness as a lawyer.

### III.

"[P]ublic confidence in the legal system requires that all members of the legal profession diligently and faithfully observe all relevant professional obligations,

including reporting misconduct and cooperating with processes designed to ensure accountability." *Anonymous Mediator v. Office of Disciplinary Counsel*, 446 S.C. 196, 200, 919 S.E.2d 425, 427 (2025). Indeed, "[t]he central purpose of the disciplinary process is to protect the public from unscrupulous and indifferent lawyers." *In re Moses*, 416 S.C. 1, 6, 785 S.E.2d 364, 367 (2016) (quotations and citation omitted). Additionally, "[t]his Court has never regarded financial misconduct lightly," *In re Wern*, 431 S.C. 643, 649, 849 S.E.2d 898, 901 (2020), or approved of dishonesty and misrepresentations by members of the Bar.

Due to the seriousness of Respondent's misconduct and her failure to self-report her indictment, we find a definite suspension of eighteen months is the appropriate sanction in this matter. Accordingly, we accept the Agreement and suspend Respondent from the practice of law in this state for a period of eighteen months, retroactive to July 29, 2022, which is the date of her interim suspension.

Within thirty days, Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct.

**DEFINITE SUSPENSION.**

**KITTREDGE, C.J., JAMES, HILL and VERDIN, JJ., concur.**